NELSON SCHAFER, JULIA SCHAFER AND ROBERT SCHAFER *v.*
BUCKEYE UNION INSURANCE COMPANY AND GRAIN
DEALERS·MUTUAL INSURANCE COMPANY

[No. 3-676A136. Filed October 19, 1978. Rehearing denied January 2, 1979.
Transfer denied May 10, 1979.]

*James M. Miller*, of South Bend, for appellants.

*James H. Pankow*, of South Bend, for appellees.

GARRARD, P.J. — On February 24, 1973, fire partially destroyed a storage building and its contents. The building was owned by Nelson and Julia Schafer and was insured by Grain Dealers Mutual Insurance Company. The building had been leased to Nelson's brother, Robert Schafer, who owned the contents. These were insured by Buckeye Union Insurance Company. Both insurance policies contained a contractual limitation against bringing suit on a claim more than twelve (12) months after occurrence of the loss. When Schafers commenced suit nearly two (2) years after the fire, the insurers raised this limitation as an affirmative defense.[1] Subsequently, they moved for summary judgment on grounds the suits were barred by the limitation. This motion was granted and Schafers appeal. They claim there was a disputed issue of material fact concerning waiver of, or estoppel to assert, the one year limit.

## I. Factual Background

By affidavit and stipulation various materials before the court on the motion for summary judgment established the following background. The loss occurred February 24, 1973, and suit was not commenced until February 19, 1975. Immediately after the loss the Schafers gave notice of their claim. This was followed shortly thereafter with an itemization of their claimed losses. They also executed insurance forms acknowledging that no representative was authorized to waive any of the provi-

---

1. While the actions were initiated separately they were consolidated for trial. Throughout, the plaintiffs were represented by the same attorney, as were the defendants. On appeal there is no contention that the rights of either plaintiffs or defendants differ *inter se*. We therefore treat their respective interests as mutual.

sions contained in the policy unless the waiver was specific and in writing.

In accord with the policy requirements the insurers requested to take depositions of the Schafers. These were scheduled for June 7, 1973. However, before this was accomplished Nelson and Julia Schafer accidentally received a copy of a letter from the claims adjustment service intended for Grain Dealers Mutual. In it the adjuster disclosed that as soon as the depositions were taken the proofs of loss which had been submitted were to be rejected. This resulted in argument and delay. On June 19th the insurers rejected the proofs of loss for "failure to comply with policy conditions" and because of the amount claimed. On September 12, 1973 the depositions were taken.

On September 26 Schafers offered a compromise settlement. The insurers counter-offered by letters dated October 16 and October 29. The last week of November Schafers made another settlement proposal. On December 3, 1973, counsel for the insurers responded. He reported transmitting information to the insurers,[2] reiterated that the difference in position concerning the building loss centered on the extent of fire damage, and concluded by stating,

"In any event, I shall advise you of what I further hear with respect to your correspondence."

Thereafter correspondence continued concerning Schafers' request for copies of their depositions, but no further mention of the settlement was made prior to February 24, 1974. At no time did the insurers deny liability. The dispute centered, instead, upon the amount of loss. While some of the correspondence from the insurers closed with a general statement that the company did not thereby intend to waive any of its rights under the policy, at no time did the insurers expressly advise Schafers of the one year suit limitation or their intent to rely upon it.

## II. Issues Raised by Pleadings

In support of their position the insurers first argue that summary judgment was proper because no issue of waiver or estoppel was before

---

2. The building had apparently been torn down after the fire. At issue was whether this was necessitated by the fire damage, or whether it was demolished for other reasons.

the court. They urge that waiver and estoppel are affirmative defenses and, as such, must be specially pleaded as required by TR.8(C). Since this was not done they contend Schafers were precluded from asserting waiver or estoppel to defeat summary judgment.

Admittedly, Schafers filed no reply to the defense of the one year limitation which the insurers pleaded affirmatively in their answer. However, we disagree with appellees as to the conclusion to be drawn therefrom.

The reason arises from the operative intent of the rules as controlling trial procedure in all civil actions rather than the phraseology of a particular section.[3] This intent was clearly manifested by the Civil Code Study Commission in its comments to TR.7(A) contrasting the operation of the rules to the prior operation of the Field Code:

> "Code pleading emphasized the role of issue-formulation in the pleadings. Consequently, the parties were expected to distill the issues by countering and criticizing the written pleadings with motions and demurrers. The framers of the Field Code felt that a three step process would be necessary if the issues were to be defined. The new procedure emphasizes the notice function of pleading and *relieves it of issue formulation.*
>
> Under the new rules a case will be readied for trial by the following process:   (1) The pleadings will identify the general character of the dispute; (2) discovery will develop the factual background of the dispute and the version of the facts relied upon by each party; (3) *the pre-trial conference will frame the issues.* The trial can then center on the *true controversy* between the parties instead of an artificial one produced by the pleadings." (Emphasis added)

1 Harvey, Indiana Practice 460.

Thus, the concept of the rules is to focus upon the pre-trial conference and order as the procedural device for formulating the real issues that

---

3.   We would, however, reach the same conclusion by strict consideration of specific sections of the rules. Trial Rule 8(C) relied upon by appellees refers to responsive pleadings. The contractual limitation was pleaded by them as an affirmative defense in their answer. TR.7 which defines the pleadings does not provide for a reply to an answer unless the court exercises its discretion to require one. Here the court made no such direction. Therefore, under TR.8(D) the averments of the answer were to be taken as denied *or avoided,* and Schafers were free to establish waiver and estoppel.

should be submitted to trial. *Accord, Colonial Mortgage Co. v. Windmiller* (1978), 176 Ind. App. 535, 376 N.E. 2d 529.

Since no pre-trial order had been entered in the present case, formulation of the issues had not *necessarily* been completed.

Of course this lack of finality would not per se preclude a court from properly granting summary judgment. TR.56(C) and (E) clearly provide that summary judgment rulings depend upon the matters that are actually put before the court. *See, e.g., Letson v. Lowmaster* (1976), 168 Ind. App. 159, 341 N.E. 2d 785. It does, however, permit the opponent of the summary judgment to raise matters which provide an actual defense. In other words, it precludes the *procedural* bar urged by the insurers. If the pleadings, depositions, etc. disclosed a genuine issue of waiver or estoppel as asserted in opposition to the motion, then the court was required to consider those issues in determining whether summary judgment was proper.

### III. The Claim of Waiver or Estoppel

The insurance contracts identically provided,

> "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The summary judgment was granted because of Schafers' failure to comply with the twelve month provision.

From the numerous decisions considering similar insurance policy limitations, we may readily discern three generalizations. It is well established in Indiana that, while not favored, such contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E. 2d 985. However, as the *Huff* court pointed out, these limitations are "easily" waived. "Slight acts and circumstances may be sufficient. . . ." 363 N.E. 2d at 992. Moreover, in treating the defenses of waiver and estoppel the decisions tend to fail to distinguish between them or to ignore the distinction. *See, e.g., Huff, supra*; Anno., 29 A.L.R. 2d 636. This no doubt occurs in many instances because facts establishing an *implied* waiver, when coupled with reliance, will equally establish an estoppel.

In the case before us the insurers argue that conduct on their part after the expiration of the year in question cannot form the basis of estoppel, and that their conduct prior to expiration of the year was insufficient to induce reliance. They contend the various non-waiver statements preclude a finding of waiver.

Conceding *arguendo* that the insurers' actions do not create a true estoppel, we must consider whether a genuine issue of waiver exists. Clearly there was no express waiver of the one year limit. However, a waiver of the limitation may be implied from the insurers' conduct. *Huff, supra.*

Several reasons mingle to facilitate an implied waiver in these cases and to distinguish them from cases concerning application of a statutory limitation to a claim of disputed liability. *Compare, e.g., Collins v. Dunifon* (1975), 163 Ind. App. 201, 323 N.E. 2d 264.

By definition contractual limitations are in derogation of the time period fixed by the legislature for bringing such actions. And they arise from adhesion contracts where the insured rarely, if ever, has a voice in bargaining.

Secondly, there is an undeniable state interest and public policy consideration in the function and administration of commercial insurance against loss in our present society.[4] Akin to this is the reasonable expectation of the purchasing public, induced in large part by the insurance industry, that one's insurance carrier is an ally rather than an opponent, at least where coverage or liability have not been denied.

Finally, the policy of the law favors settlement of disputes. In this regard the insurers urge that application of the waiver doctrine would deter settlements because the insurer risks losing the benefit of its contractual limitation if it negotiates. We believe that whatever the truth of this assertion, it is more than offset by the public policy considerations and the deterrence to settlement arising from interjecting into negotiations the necessity of taking the time

---

4. The numerous statutes dealing with insurance companies and policy requirements are, perhaps, the clearest authority.

and incurring the additional expense of commencing formal litigation merely to prevent the contract limitation from becoming a bar.

The finding of an implied waiver under the circumstances here does not nullify contractual limitations or their legitimate purpose. Such provisions do protect the insurer from the policy holder who voices no claim until the year has long since expired. This promotes early notification while evidence is available. It also provides carriers with a basis for forming business judgments concerning claim reserves and premium rates.

In addition, even where it has attempted to negotiate settlement, we see no reason why an insurer would be precluded from relying on the limitation where it expressly so advises the insured a reasonable time before the expiration date or within such time clearly advises the insured that it is unwilling to further change its position respecting the claim.

We think this view holds the advantage of fairness to both parties. Accordingly, we hold that where, as here, an insurance carrier does not deny coverage or liability, and proceeds to negotiate with the insured toward settlement of the claim, the law will imply a waiver of the contractual limitation for the bringing of suit, unless and until the insurer puts the insured on notice that litigation is necessary if he desires to pursue the claim further.[5]

Accordingly, the summary judgment was erroneous. We therefore reverse and remand for further proceedings consistent with this opinion.

Staton, J. and Hoffman, J. Concur.

NOTE — Reported at 381 N.E. 2d 519.

---

5. A statement in *American Income Ins. Co. v. Kindlesparker* (1941), 110 Ind. App. 517, 37 N.E. 2d 304 indicates that once waived, such rights are gone forever. While the issue is not before us, we see no reason why a time limit for taking action may not be reinstated after notice to that effect where the original limitation period was waived by the insurer's conduct. Our holding today supports such a construction since we have determined that the legitimate purpose of such provisions concerns not a specific date following the loss but unreasonable delay in proceeding to enforce or pursue the claim. *Compare, Statesman Ins. Co. v. Reibly* (1978), 175 Ind. App. 317, 371 N.E. 2d 414; *Continental Ins. Co. v. Thornburg* (1966), 141 Ind. App. 554, 219 N.E. 2d 450.